UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL RUDY, | ) |
| Petitioner, | ) |
| v. | ) Civil Action No. 16-10065-RGS |
| RAYMOND MARCHILLI, | ) |
| Respondent. | ) |

REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS

December 17, 2018

Boal, M.J.

On January 14, 2016, petitioner Michael Rudy filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Docket No. 1. Rudy seeks relief from this Court on the sole ground that his trial counsel's admitted failure to communicate a plea offer to him prior to trial violated his Sixth Amendment Right to the effective assistance of counsel. For the following reasons, this Court recommends[1] that the District Judge assigned to this case deny the Petition.

I.  FACTUAL AND PROCEDURAL BACKGROUND

   A.  The State Court Trial, Motion For A New Trial, And First Appeal

On August 13, 2008, Rudy was convicted by a jury of rape, assault with intent to rape, five counts of indecent assault and battery, two counts of open and gross lewdness, and two

---

[1] On January 18, 2016, the District Court referred this matter to the undersigned for a report and recommendation. Docket No. 6.

1

counts of furnishing alcohol to a minor.[2] Commonwealth v. Rudy, 87 Mass. App. Ct. 1102 (2015); see also Supplemental Answer ("S.A.") at 8. On September 3, 2008, the trial judge sentenced Rudy to concurrent state prison terms of not less than sixteen years and not more than twenty years on the convictions for rape and assault to rape a child, and to ten years' supervised probation on the remaining convictions to run from and after the committed sentence. S.A. 9. The trial judge also sentenced Rudy to community parole supervision for life on the convictions for rape, assault with intent to rape a child, and indecent assault and battery on a person fourteen or over. S.A. 9. Rudy timely appealed.

On September 5, 2008, Rudy filed a motion to revise and revoke his sentence, which was denied by the trial judge on September 11, 2008. S.A. 9. Rudy also appealed his sentence to the Appellate Division of the Superior Court. S.A. 10. On June 8, 2009, the Appellate Division upheld Rudy's sentence. Id.

Rudy filed a motion to stay his direct appeal to allow him to file a motion for a new trial in Superior Court. S.A. 79. The Appeals Court subsequently allowed the motion for leave to file a motion for a new trial. Id. On March 16, 2011, Rudy filed a motion for a new trial claiming, among other things, that his trial counsel was ineffective because he never informed Rudy of a reasonable plea offer conveyed by the prosecutor prior to trial. S.A. 183-185. On July 1, 2011, the trial judge denied the motion for a new trial without a hearing. S.A. 11. Rudy timely appealed the denial of his motion for a new trial. Id.

In his consolidated appeal before the Appeals Court, Rudy raised several grounds, including that defense counsel deprived him of his state and federal constitutional rights to

---

[2] Rudy was acquitted of two counts of indecent assault and battery and the trial judge allowed his motion for a required finding of not guilty on one count of assault with intent to rape. Commonwealth v. Rudy, 82 Mass. App. Ct. 1109, *1 n. 1 (2012).

effective counsel by failing to inform him of the government's reasonable plea offer.  S.A. 83-146.  The Appeals Court affirmed the judgment of conviction but vacated the order denying Rudy's motion for a new trial as it pertained to his argument of ineffective assistance of counsel based on counsel's failure to inform him of his plea offer.  Rudy, 82 Mass. App. Ct. 1109, at *4.  The Appeals Court remanded the case to the Superior Court for an evidentiary hearing on the issue of ineffective assistance of counsel.  Id.

On August 15, 2012, Rudy filed an application for further appellate review ("ALOFAR") in the Massachusetts Supreme Judicial Court ("SJC") challenging the Appeals Court decision to the extent it affirmed the denial of his new trial motion on the grounds of prosecutorial misconduct and ineffective assistance of counsel at trial.  S.A. 339-341.  The SJC denied Rudy's ALOFAR on September 27, 2012.  Commonwealth v. Rudy, 463 Mass. 1109 (2012), S.A. 363.

B.     The Facts Underlying Rudy's Convictions

The following recitation of the facts by the Appeals Court is presumed to be correct.  See 28 U.S.C. § 2254(e)(1); Gunter v. Maloney, 291 F.3d 74, 76 (1st Cir. 2002); see also Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007) (citations omitted) ("The 'presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact."):

> The two victims, whom we shall call Francesca and Greta,[3] are nieces of the defendant.  The events underlying the convictions occurred during a late night party at the defendant's apartment in Lowell on September 2, 2006.  Francesca was twenty years old and Greta was fourteen years old at the time.  By all accounts, copious amounts of alcohol were consumed by everyone including the defendant.  Francesca and Greta each testified that the defendant sexually assaulted them at various times throughout the night and that they could not leave because the defendant took and hid

---

[3] Footnote 3 of the Appeals Court's decision, inserted here, states: "The names are pseudonyms." Due to the nature of the crime in this case, this Court will continue to use the pseudonyms throughout this opinion.

> Francesca's car keys, stating that she was too intoxicated to drive. Eventually, at about five o'clock in the morning, Greta retrieved the keys while the defendant was in the bathroom and the cousins were able to escape. There was evidence that the defendant subsequently apologized to both Francesca and Greta and told them he was drunk and could not remember what happened on the night in question. There was also evidence that, at another proceeding, Francesca denied that the defendant had assaulted her. She testified at trial pursuant to a grant of immunity.
>
> The defendant denied the allegations. His theory of defense was to undermine the credibility of the victims, particularly Francesca, through cross-examination. He also presented testimony from two witnesses who had attended the party, both of whom maintained that the alleged events had not occurred.

Rudy, 82 Mass. App. Ct. 1109, at *1.

    C.    The Evidentiary Hearing On Remand

On October 26, 2012, the trial judge held an evidentiary hearing on Rudy's claim of ineffective assistance of counsel based on counsel's failure to inform him of the plea offer. S.A., Vol. II, Ex. 9. On October 31, 2012, the trial judge issued a memorandum and order denying the motion for a new trial. S.A. 12, 462-479.

    1.    Findings Regarding Procedural Matters

The trial judge made the following findings of fact regarding procedural matters:[4]

> Certain pretrial matters are relevant to issues raised in Rudy's motion for new trial. Rudy was indicted on February 1, 2007, and was arraigned on March 23, 2007. Bail was set and posted in the amount of $2,500. No motions to suppress were filed, as Rudy gave no post-arrest statements. No motions to suppress were filed. No forensics, such as DNA, were part of the Commonwealth's case. Trial dates of March 17, 2008, May 22, 2008, and July 8, 2008 were continued. Rudy moved to continue the May 22nd date [D. 17], while the Commonwealth moved to continue the July 8th date. [D. 22]. The docket does not reflect the reason for the March 17th continuance. Rudy remained on bail until shortly before trial, when his bail

---

[4] Because the Appeals Court affirmed the trial court's decision without explanation, and the SJC denied Rudy's ALOFAR, the Court looks to the last reasoned state court decision—in this case, the trial judge's October 31, 2012 memorandum and order denying the motion for a new a trial. See Janosky v. St. Amand, 594 F.3d 39, 47 (1st Cir. 2010) (citation omitted).

4

> was revoked on July 21, 2008, on the Commonwealth's motion. The basis for the revocation was allegations of witness intimidation of [Francesca]. Those same facts became the basis of a criminal charge of intimidation against Rudy, which was pending in Middlesex Superior Court when this matter went to trial (MICR2008-00878). Also pending at that time in Middlesex Superior Court were various assault charges unrelated to this case (MICR2007-00334). After sentencing in this case, Rudy pled guilty to the intimidation and assault charges and received a three years to three years and one day concurrent state prison sentence.
>
> [Francesca's] participation as a witness at trial was in doubt until after the jury was impaneled and sworn. On the second day of trial, the court released the jury early and conducted a voir dire concerning [Francesca's] invocation of her privilege against self-incrimination. She was represented by counsel and invoked her privilege based on her earlier sworn testimony before the Sex Offender Registry Board ("SORB"), which was expected to be contrary to her anticipated trial testimony. At the earlier SORB hearing, [Francesca] denied that any sexual assaultive conduct occurred on September 2, 2006. The court found her invocation to be valid, and thereafter denied the Commonwealth's motion to admit [Francesca's] hearsay statements under the forfeiture by wrongdoing doctrine. [D.46] On the third day of trial, the Commonwealth sought and obtained a judicial order granting [Francesca] immunity from using her trial testimony against her. [D. 48, 50]. She thereafter testified at trial.

S.A. 465-466.

    2.    <u>Findings Regarding The Plea Offer</u>

Regarding the plea offer, the trial judge found that:

> Rudy's trial counsel, Attorney Donald Larsen ("Larsen"), filed an affidavit in support of Rudy's motion for new trial. He attested that approximately two months prior to the August 5th start of trial, he spoke briefly with the prosecutor (the "prosecutor") in the courtroom.[5] He stated: "In that discussion, [the prosecutor] offered to recommend a sentence of 7 to 9 years

---

[5] Footnote 3 of the trial court's decision, inserted at this point, stated:

> If the courtroom encounter was in connection with this case, the most likely date, about two months prior to trial, for counsel to have been in court was May 22, 2008, when the trial date was continued on Rudy's motion. It also could have occurred on or about July 8, 2012, when the trial was continued at the Commonwealth's request. At the hearing, Larsen was unable to be more precise, and did not rule out the conversation occurring as early as May 22nd or a late as mid-July.

5

in prison in exchange for defendant's guilty plea." The prosecutor's affidavit attested that he has no recollection of any such conversation regarding sentencing recommendations or potential pretrial pleas in this case, but continued that he has "no reason to doubt or discredit Attorney Larsen's representations regarding statements of mine pertaining to a pretrial sentencing recommendation in this case and accept them as true." Importantly, the prosecutor did not assert that he could not or would not have made such a recommendation. He did not assert that any such recommendation would only have been conditioned upon approval by supervisors in his office and/or only if reduced to a writing signed by a supervisor in his office. The bottom line, at least to this court, was that the prosecutor has no recollection of any such conversation, but accepted that it occurred and that the position attributed to him is within the realm of possible positions he would have taken at the time, and was not conditioned by having to obtain any supervisory approval.

Larsen's testimony at the hearing was consistent with his affidavit. He was not able to be any more precise about when the conversation occurred. He did however recall that the offer was accompanied by a statement by the prosecutor that one of the Commonwealth's witnesses (understood to be [Francesca]) may not be on board. With that as context, Larsen recalled that the prosecutor then said he would consider a seven to nine year sentence if Rudy offered to plea. Larsen did not respond, and viewed his silence as an implicit rejection. Larsen has no memory of ever telling Rudy about the offer, either before trial or after verdict. Rudy testified that Larsen did not convey to him the offer before trial and only told him about the offer when they were meeting to prepare for sentencing. Larsen has no memory of a post-trial disclosure to Rudy, and believes he first mentioned the plea offer when discussing the case with Rudy's appellate counsel. Whether Larsen told Rudy or Rudy's appellate counsel about the offer after trial is of no consequence. The court finds that Larsen received an offer from the Commonwealth before trial and failed to convey it to Rudy until after trial.[6]

S.A. 467-469.

---

[6] Footnote 4 of the trial court's decision, inserted at this point, stated:

> The absence of more detail in the offer is also of no consequence. There was no discussion about how the sentence would be distributed among counts, length and conditions of probation, and/or community parole supervision for life. There was no mention of Rudy's other pending criminal cases. Nevertheless, the crucial factor for any consideration of a plea offer is the longest term of imprisonment, and that was conveyed to Larsen and should have been conveyed, as he acknowledges, by him to his client.

3.     Findings Regarding Lack Of Credibility

As to Rudy's testimony and credibility, the trial judge stated:

> In its written memorandum of decision denying Rudy's new trial motion [D.79], this court wrote:
>
>> Rudy maintains in his affidavit, as he did at sentencing while addressing the court before imposition of sentence, that he was so intoxicated on the night in question that he did not remember the events of the evening. The court did not believe Rudy then, and does not now. His reliance on intoxication, in this court's view, is nothing more than an attempt to minimize the egregious wrongfulness of his conduct, and to permit him to contend to his friends and mother that he was not responsible for his conduct even if the allegations were true.[7]
>
> The court had it right in its earlier decision. To say that Rudy changed his tune at the recent hearing would be an understatement. From his earlier denial of any memory of his sexual assaults on his nieces, he admitted under oath at the hearing to remembering his conduct on the night in question and to admitting that he engaged in the sexually assaultive conduct, including rape of [Francesca], for which he was convicted. Rudy freely admitted he lied to the court at sentencing. He freely admitted he lied to Larsen throughout the case, including trial, and that he never told Larsen that [Francesca's] and [Greta's] claims were true. He now claims that in the several days after the night in question, as he spoke to [Francesca] and [Greta], their accusations brought back his memory and filled in gaps that had originally been missing.
>
> Frankly, the rest of Rudy's testimony was intentionally tailored to the legal standard he knows this court must apply. He obviously knows that the failure to convey a plea offer satisfies only the first prong of a two-prong standard that must be met in order to obtain a new trial/re-sentencing. The

---

[7] Footnote 5 of the trial court's decision, inserted at this point, stated:

> Rudy addressed the court before sentence was imposed. He started by stating: 'I stand before you found guilty of a crime I know in my heart I couldn't have committed. I love [Francesca] and [Greta] like an uncle, and nothing more.' He ended his elocution by stating: 'Your honor, there was testimony [that] was not allowed that I feel surely would have proved my innocence. These laws are referred to as victim shield laws. This – this time they shielded justice. Josh would have testified that he, in fact, was the one that had sexual relations with – [Francesca], not I. I was no where near her.'

7

court's written memorandum decision denying his new trial motion without a hearing made the standard, and the failure of Rudy's affidavits to meet that standard, perfectly clear. Accordingly, he testified that he knew his prospects of an acquittal at trial were not good and that he would have accepted the seven to nine years sentence if Larsen had conveyed it and had thereafter been unsuccessful in obtaining a better result through a counteroffer and further negotiation. He testified that when the Commonwealth tried to revoke his bail in March 2008 based on allegations from [Greta], and successfully moved to revoke his bail in July 2008 based on allegations from [Francesca], he knew they would testify against him and concluded that his prospects had turned decidedly poorer. He testified that the only reason he went to trial was that he believed it was only the Commonwealth that could initiate plea discussions, and without a plea offer from the Commonwealth he believed he had no choice but to go to trial.[8]

D.  Second Appeal

Rudy appealed the trial judge's decision denying a new trial.  S.A. 12.  On January 21, 2015, in an unpublished memorandum and order pursuant to its Rule 1:28, the Appeals Court affirmed the order denying the motion for a new trial.  Rudy, 87 Mass. App. Ct. 1102.  On February 11, 2015, Rudy filed an ALOFAR, which the SJC denied.  S.A. 597.

---

[8] Footnote 6 of the trial court's decision, inserted at this point, stated:

> Rudy testified, not necessarily credibly, that he thought any effort on his part to initiate plea discussions would be conveyed to the jury hearing his case. He did testify credibly that he was experienced in the criminal justice system, and had always resolved his cases by way of pleas. However, as the Commonwealth pointed out, he had received only house of corrections sentences, the longest sentence being only eighteen months. Rudy was convicted by way of pleas in five earlier superior court cases. MICR1989001195; MICR1996-01720; MICR1996-02072; and MICR2000-1560. The docket for the 2000 case includes reference to a lobby conference being held. The three 1996 cases were sentenced on the same day with concurrent sentences and some filed charges, reflecting agreement between Rudy and the Commonwealth. Rudy testified that his lawyer in his earlier cases always came to him with plea offers from the Commonwealth. However, that does not necessarily mean that the Commonwealth initiated plea discussions or that Rudy's counsel did not.

II.     HABEAS CORPUS STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), presents a "formidable barrier" limiting the availability of habeas relief where state courts have adjudicated the merits of a prisoner's claims.  Burt v. Titlow, 571 U.S. 12, 19 (2013).  Rudy may not obtain federal habeas relief under 28 U.S.C. § 2254(d) unless he can show that the SJC's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  In other words, state court decisions merit substantial deference.

As the Supreme Court repeatedly has emphasized, such deference results in a federal habeas corpus standard that is "difficult to meet," with the petitioner carrying a heavy burden of proof.  Harrington v. Richter, 562 U.S. 86, 102 (2011); accord Cullen v. Pinholster, 563 U.S. 170, 181 (2011).  If a state court's decision "was reasonable, it cannot be disturbed."  Hardy v. Cross, 565 U.S. 65, 72 (2011); see Parker v. Matthews, 567 U.S. 37, 38 (2012) (emphasizing federal habeas courts may not "second-guess the reasonable decisions of state courts" (internal quotation and citation omitted)).  When applying this strict standard, a court must presume that the state court's factual findings are correct, unless the petitioner has rebutted that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Miller–El v. Cockrell, 537 U.S. 322, 340–41 (2003).

The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different] result."  Id. at 406 (internal citation omitted).

9

The "unreasonable application" prong is satisfied if the state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  When making the "unreasonable application" inquiry, federal habeas courts must determine "whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. An unreasonable application of the correct rule can include the unreasonable extension of that rule to a new context where it should not apply, as well as an unreasonable failure to extend the rule to a new context where it should apply. Id. at 407.  It cannot, however, include a decision by a state court not "to apply a specific legal rule that has not been squarely established by [the Supreme Court]." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).  Once again, this assessment is limited to federal law as articulated by the Supreme Court, and not the lower federal courts.  See Lopez v. Smith, 135 S.Ct. 1, 4 (2014).  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Matthews, 567 U.S. at 48.

A showing of clear error is not sufficient for a habeas petitioner to establish entitlement to relief.  Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003); accord McCambridge v. Hall, 303 F.3d 24, 36–37 (1st Cir. 2002).  Rather, relief is available only where a state court's "determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir. 2002); see also Harrington, 562 U.S. at 103 (requiring a petitioner to "show that the state court's ruling . . . was so lacking in justification that there was an . . . error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement").

Further, even if a state court decision is contrary to, or an unreasonable application of,

10

established federal law, a petitioner is not entitled to habeas relief unless harm resulted. The standard for determining whether relief must be granted is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 551 U.S. 112, 121 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)); see also Connolly v. Roden, 752 F.3d 505, 510–11 (1st Cir. 2014).

III. ANALYSIS

Rudy argues that the trial judge's finding that he did not suffer prejudice as a result of his counsel's failure to inform him of the plea offer was an unreasonable application of clearly established federal law regarding ineffective assistance of counsel. See Docket No. 33 at 12, 13-29. This Court finds that Rudy has not shown that he is entitled to habeas relief.

    A.    Ineffective Assistance Of Counsel In The Context Of Plea Bargaining

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 163 (2012) (citations omitted). Thus, defendants are entitled to the effective assistance of counsel during plea negotiations. Id. (citing McMann v. Richardson, 397 U.S. 759, 771 (1970)). In evaluating an ineffective assistance of counsel claim based on counsel's failure to convey a plea offer, the Court applies the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Id.

Under the Strickland analysis, Rudy must show that: (1) counsel's performance was deficient, i.e., counsel made errors so serious that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense, i.e., counsel's errors were so serious as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687.

The failure to inform a client of a plea offer ordinarily constitutes ineffective assistance

of counsel.  Rivera-Rivera v. United States, 844 F.3d 367, 372 (1st Cir. 2016) (citations omitted). Here, the trial judge found that Rudy's counsel's failure to inform him of the government's plea offer easily met the first prong of the Strickland test.  S.A. 473.  The question before the Court, therefore, is whether the trial judge's decision that Rudy had failed to show prejudice under the second prong of the Strickland test was objectively unreasonable.

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  In this context, Rudy must show that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 566 U.S. at 164.

On habeas review, a "doubly deferential standard" applies to a petitioner's claim that a state court has unreasonably applied the Strickland principles.  Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011).  The "pivotal question" is not whether the petitioner has met the Strickland standard in the first instance, but whether "fairminded jurists would all agree that the [state court's] decision [that he has not met it] was unreasonable."  Id. (internal citations omitted). And, because "the Strickland standard is a very general one, . . . state courts have considerable leeway in applying it to individual cases."  Id.

  B.  Rudy Has Not Shown That The Trial Judge's Decision Was Unreasonable

Rudy challenges the trial judge's conclusion that there was not a reasonable probability

that Rudy would have pleaded guilty had he been advised of the government's plea offer. None of Rudy's arguments, however, show entitlement to habeas relief.

First, Rudy argues that the trial judge's decision was unreasonable because he failed to consider the potential impact of trial counsel's advice on Rudy's decision whether to accept the prosecution's plea offer. Docket No. 33 at 21-22. Specifically, Rudy argues that the trial judge gave no consideration to the fact that trial counsel had serious doubts about Rudy's prospects at trial, but failed to share those doubts with Rudy. Id. at 21. He also argues that the trial judge gave no consideration to the fact that trial counsel believed that the prosecution's offer was fair but failed to share that assessment with Rudy. Id.

Although Rudy is correct that the trial judge did not specifically mention the potential impact of trial counsel's advice on Rudy's decision whether to accept the plea offer, the trial judge set forth many other reasons for his conclusion that there was not a reasonable probability that Rudy would have taken the offer. In addition, Rudy's view of the facts in this regard is not entirely supported by the record. While he is correct that trial counsel stated that the case was "tough," he did not testify that he had serious doubts about Rudy's prospects at trial. Rather, in response to questioning, Attorney Larsen stated that he did not think that winning at trial was a "long shot" and suggested that he could at least beat the rape charges. S.A., Vol. II, Tab 9 at 114-115. He also testified about what he perceived to be weaknesses in the government's case, including that the victims were reluctant to testify and the fact that one of the victims' testimony would be vulnerable to impeachment, due to her recanting under oath. See, e.g., S.A., Vol. II, Tab 9 at 101, 111.

Next, Rudy challenges several of the trial court's findings supporting its conclusion that Rudy would not have pleaded guilty if he had been properly advised of the prosecution's plea

offer.  Docket No. 33 at 22-27.  He states that those findings "do not withstand scrutiny."  Id. at 22.  This Court disagrees.

Rudy challenges the trial judge's reliance on Rudy's continued claims of innocence leading up to and during the trial.  Id. at 22, 23-24.  However, Rudy does not dispute that he in fact claimed he was innocent all throughout the proceedings.  See id.  And, while not dispositive, a petitioner's protestations of innocence are relevant to the Strickland prejudice inquiry.  See, e.g., Wheeler v. Rozum, 410 Fed. Appx. 453, 458 (3rd Cir. 2010) (citing cases); Young v. Zon, 827 F. Supp. 2d 144, 160 (W.D.N.Y. 2011) (citing Cullen v. United States, 194 F.3d 401, 407 (2nd Cir. 1999)).  Rudy's claims of innocence were only one factor, among several, that the trial court considered in evaluating Rudy's claims.

Rudy also challenges the trial court's findings regarding Rudy's intent in avoiding any prison sentence, his belief that the victims would not testify, and the potential collateral consequences of a conviction, whether by plea or verdict.  Docket No. 33 at 24-26.  Those findings, however, are subject to a presumption of correctness and Rudy has not presented clear and convincing evidence to rebut them.[9]  To the extent that he challenges the conclusions reached based on those facts, this Court is unable to find that fair minded jurists would all agree that those conclusions were unreasonable.

Finally, Rudy challenges the trial judge's finding that "this was a very triable case."  Docket No. 33 at 26.  In so doing, Rudy argues that the trial judge's view of the strength of the case is irrelevant to evaluating Rudy's potential willingness to plead guilty.  Id.  Rather,

---

[9] While a state court's legal conclusions regarding claims of ineffective assistance of counsel are not factual findings subject to the presumption of correctness, the presumption of correctness does apply to the underlying findings of fact on which the conclusions are based.  Martin v. Landry, No. 2:14-cv-439-DBH, 2015 WL 2092585, at *5 (D. Me. May 5, 2015) (citing Ready v. Scopa, 974 F.2d 1329 (1st Cir. 1992)).

according to Rudy, only his and his counsel's subjective view of the case is relevant to the inquiry. Id. This Court disagrees.

The prejudice inquiry under Strickland is an objective, not subjective, standard. United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012); Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012); see also Hill v. Lockhart, 474 U.S. 52, 60 (1985) ("As we explained in Strickland v. Washington, supra, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decision maker.'"). Thus, to show prejudice, Rudy had to convince the trial judge that there was a reasonable probability that a defendant under the circumstances would have taken the government's plea offer. Cf. Pilla, 668 F.3d at 373. In turn, in order to demonstrate entitlement to habeas relief, Rudy has to show that the trial court's decision to the contrary was not just wrong but that no fair minded jurist would agree with the trial judge. Jewett, 634 F.3d at 75.

Here, the trial judge found that the case was "triable" because the charges against Rudy were the kind that frequently proceed to trial, "and not infrequently result in acquittals." S.A. 478. In addition, he observed that there was no physical or DNA evidence corroborating the victims' testimony; the victims were intoxicated at the time of the offense; and Francesca was a very impeachable witness, with a prior conviction and prior sworn testimony that the assaults had not occurred. Id. It was also not clear that Francesca would actually testify at trial until after the jury was impaneled and sworn. S.A. 466. Further, other witnesses testified that they did not observe any inappropriate conduct by Rudy and there was evidence that Francesca and Greta's conduct on the day after the offense was inconsistent with their allegations. S.A. 478. Those findings, which are supported by the record, bolster the judge's determination that Rudy's prospects at trial were much more favorable than he now claims. In light of those findings,

together with Rudy's claims of innocence, and the other factors cited by the judge, this Court is unable to conclude that it would be unreasonable to find that a reasonable defendant under the circumstances would have rejected the plea and decided to go to trial. Accordingly, Rudy has failed to meet the stringent standard necessary to obtain habeas relief on an ineffective assistance of counsel claim.

        C.      Rudy's Challenges To The Trial Judge's Credibility Findings

Rudy also argues that the trial judge's "curious and unwarranted focus on Rudy's credibility" demonstrates that his decision was objectively unreasonable. Docket No. 33 at 27. Rudy does not appear to be challenging the judge's finding that Rudy was not credible.[10] Rather, he appears to be arguing that the judge's focus on credibility was misplaced in this context. Id. at 28, Docket No. 37 at 6. Specifically, Rudy asserts that "the judge incorrectly and unfairly reduced to [sic] his inquiry to a credibility determination rather than looking at relevant objective circumstances like the potential impact of trial counsel's advice about the plea offer, the disparity between the plea offer and Rudy's sentence exposure, and trial counsel's assessment of the strength of the prosecution's case." Id. at 28.[11] Rudy also suggests that because the question of what Rudy would have done under different circumstances is a hypothetical question, credibility is the wrong issue on which to focus. Docket No. 37 at 6.

---

[10] To the extent that Rudy is in fact challenging the judge's determination that he was not credible, it is easy to dispose of that claim. "[C]redibility determinations . . . are exactly the type of factual determinations to which [a federal court] defer[s]." Teti, 507 F.3d at 59. "A federal habeas court has 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" Burns v. Dickhaut, No. 08-11009-PBS, 2012 WL 1079844, at *5 (D. Mass. Mar. 28, 2012) (quoting Caldwell v. Maloney, 159 F.3d 639, 650 (1st Cir. 1998)).

[11] The Court notes that this argument appears to be inconsistent with Rudy's argument that in looking at Rudy's prospects at trial, the Court should have focused only on Rudy and his counsel's subjective view of the strength of the government's case.

Even if Rudy is correct on this point (and there is some logical appeal to it), the fact remains, as discussed above, that given the potential problems with the government's case against Rudy, it would not be unreasonable to conclude that Rudy did not show prejudice under Strickland.  Accordingly, Rudy has not shown entitlement to habeas relief.

## IV. RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case deny Rudy's Petition.

## V. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal  
JENNIFER C. BOAL  
United States Magistrate Judge